1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Robert F. Lindley, Jr.,                )   No. 06-0528-PHX-DGC
                                            )
10              Plaintiff,                  )   **ORDER**
                                            )
11  vs.                                     )
                                            )
12  Dora B. Schriro, et. al.,               )
                                            )
13              Defendants.                 )
    _____)

14

15          Pending before the Court are Petitioner Robert F. Lindley, Jr.'s petition for writ of

16  habeas corpus under 28 U.S.C. § 2254, United States Magistrate Judge Mark Aspey's Second

17  Report and Recommendation ("R&R"), and Petitioner's objections to the R&R.  Dkt. ##1,

18  21, 24.  For the reasons stated below, the Court will accept the R & R and deny the petition.

19  **I.      Background.**

20          On May 30, 1990, Petitioner was convicted of 10 counts of child molestation and

21  sexual conduct with a minor, and was later sentenced to more than five terms of life

22  imprisonment. *See* Dkt. #11 at 2-3. On November 9, 2006, the Court entered an order that

23  accepted in part and remanded in part the first R&R.  Dkt. #19.  The order detailed

24  Petitioner's appeals and three petitions for post-conviction relief. *Id*. at 2-3. The Court

25  agreed that Petitioner's habeas corpus petition was not timely because he did not have a state

26  court proceeding pending on April 24, 1996, the effective date of the Antiterrorism and

27  Effective Death Penalty Act ("AEDPA"), and did not file his federal habeas claim within the

28  one year grace period which ended on April 24, 1997. *Id*. at 2; *see also Patterson v. Stewart*,

1   251 F.3d 1243, 1245-46 (9th Cir. 2001).  The Court remanded the petition to Judge Aspey
2   for consideration of whether Petitioner's claim of actual innocence excuses the untimely
3   filing.  Dkt. #19 at 4.

4        Judge Aspey issued the second R&R on January 18, 2007, recommending that the
5   Court deny Petitioner's habeas corpus petition because Petitioner did not show that he is
6   actually innocent.  Dkt. #21.  Petitioner filed written objections on March 16, 2007.  Dkt.
7   #24.  The Court issued an order on April 6, 2007, directing Respondents to respond to
8   Petitioner's objections, especially objections alleging that certain exculpatory medical
9   evidence was in Respondent's control.  Dkt. #27.  Respondents filed a response to
10  Petitioner's objections on June 21, 2007.  Dkt. #30.

11  **II.   Legal Standard.**

12       When a petitioner has procedurally defaulted his habeas claims, review on the merits
13  is available only when necessary to prevent a fundamental miscarriage of justice.  *See Schlup*
14  *v. Delo*, 513 U.S. 298, 327 (1995).  Such a miscarriage has occurred when a constitutional
15  violation has probably resulted in the conviction of one who is actually innocent.  *Id*. at 326-
16  327.  To establish his actual innocence, a petitioner must show it is more likely than not that
17  no reasonable juror could have found him guilty of the offenses.  *Id*. at 327.

18       The Supreme Court has described this type of "actual innocence" as a "gateway" that
19  allows the court to consider procedurally defaulted claims.  *Schlup*, 513 U.S. at 315-16.  "A
20  petitioner need not show that he is actually innocent of the crime he was convicted of
21  committing; instead, he must show that a court cannot have confidence in the outcome of the
22  trial."  *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quotations omitted).

23       "To be credible," a *Schlup* actual innocence claim "requires petitioner to support his
24  allegations of constitutional error with new reliable evidence – whether it be exculpatory
25  scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was
26  not presented at trial."  *Schlup*, 513 U.S. at 324.  The court is not bound by rules of
27  admissibility, and the court may consider the probative value of relevant evidence that was
28  wrongfully excluded, illegally admitted, or unavailable.  *Id*. at 327-28.  The new evidence

1    may "call into question the credibility of the witnesses presented at trial. . . . [and] the habeas

2    court may have to make some credibility assessments." *Schlup*, 513 U.S. at 330.

3         Petitioner asserts that he is entitled to habeas relief on four grounds: (1) he was denied

4    his constitutional right to be tried by a fair and impartial jury, (2) he was denied his right to

5    effective assistance of trial counsel because counsel failed to raise certain issues, (3) he was

6    denied his right to effective assistance of appellate counsel because appellate counsel failed

7    to raise certain issues on direct appeal, and (4) his due process rights were violated because

8    there was insufficient evidence to support his conviction. *See* Dkt. ##1; 21 at 8.  Because

9    Petitioner did not file his federal habeas petition within the time limits set forth by AEDPA,

10   the only way for the Court to address these claims on the merits is to find that Petitioner has

11   shown that it is more likely than not that no reasonable juror could have found him guilty.

12   **III.   Discussion.**

13        **A.    AEDPA's Statue of Limitations.**

14        In its November 9, 2006 order, the Court agreed with the first R&R that Petitioner's

15   petition was untimely because it was not filed within one year of the effective date of

16   AEDPA.  Dkt. #19 at 2-3.  The Court then remanded the petition to Magistrate Judge Aspey

17   for consideration of Petitioner's *Schlup* actual innocence claim.  *Id*. at 4.  Respondents

18   oppose the Court's consideration of a *Schlup* actual innocence claim, because while *Schlup*

19   applies to a situation in which a petitioner's claims are procedurally defaulted, it does not

20   apply explicitly to a situation in which a petitioner's claims are filed beyond AEDPA's

21   statute of limitations.  Dkt. #30 at 7.  The R&R correctly notes that the circuit courts of

22   appeal disagree on whether a showing of actual innocence warrants equitable tolling of

23   AEDPA's statute of limitations. Dkt. #21 at 12; *compare, e.g., Escamilla v. Jungwirth*, 426

24   F.3d 868, 871-72 (7th Cir. 2005) (actual innocence does not excuse untimely filing); *David*

25   *v. Hall*, 318 F.3d 343, 347 (1st Cir. 2003) (same); *with Souter v. Jones*, 395 F.3d 577, 599

26   (6th Cir. 2005) (actual innocence may excuse belated filing); *Flanders v. Graves*, 299 F.3d

27   974, 978 (8th Cir. 2002) (actual innocence may warrant equitable tolling of AEDPA's statute

28   of limitations provided petitioner can show he was prevented from discovering facts in a

1    timely fashion).  The Ninth Circuit has not squarely addressed the issue.  *See Majoy*, 296

2    F.3d at 776-77 (the question of "whether surviving the rigors of this [*Schlup*] gateway has

3    the consequence of overriding AEDPA's one-year statute of limitation [is] a legal question

4    not yet decided by this Circuit or the Supreme Court.").

5         Respondents argue that AEDPA's statute of limitations must be treated as a

6    jurisdictional requirement, and that Petitioner's failure to file his federal habeas petition

7    within one year of AEDPA's passage strips the Court of authority to consider the petition.

8    Dkt. #21 at 30.  Respondents cite the recent Supreme Court case of *Bowles v. Russell*, which

9    held that the timely filing of an appeal in a civil case is a jurisdictional requirement.  127

10   S.Ct. 2360, 2366 (2007).  The Court in *Bowles* reasoned that because federal statutes set forth

11   time limits on filing a notice of appeal and reopening the appeal period, Congress intended

12   to preclude a court's jurisdiction over otherwise legitimate cases after a certain period of time

13   had elapsed from final judgment.  *Id.*

14        Like the federal statutes at issue in *Bowles*, AEDPA sets time limits on when a

15   petitioner must file his claim.  *See* 28 U.S.C. § 2244(d)(1).  The Supreme Court has twice

16   denied certiorari on the question of whether these limits are jurisdictional.  *See David v.*

17   *Hall*, 540 U.S. 815 (2003); *Flanders v. Graves*, 537 U.S. 1236 (2002).  If the Supreme Court

18   were to address this issue it might follow the reasoning in *Bowles* and find the AEDPA

19   limitations provisions jurisdictional.  The Supreme Court might also reach a different result,

20   however, because the Court has "repeatedly noted the interplay between statutory language

21   and judicially managed equitable considerations in the development of habeas corpus

22   jurisprudence."  *Schlup*, 513 U.S. at 319 n.35.

23        Despite these unanswered questions and the inviting challenge of seeking resolution

24   of the jurisdictional question, the Court will not address the jurisdictional issue at this stage.

25   The Ninth Circuit has suggested that courts should review the merits of an actual innocence

26   claim before deciding the statute of limitations issue.  This is because serious constitutional

27   questions involving the Due Process Clause, Suspension Clause, and Eighth Amendment

28   could arise from preventing a petitioner who may be actually innocent from pursuing

untimely habeas claims.  *Majoy*, 296 F.3d at 776 (citing cases).  To avoid wrestling with these important constitutional issues unnecessarily, courts should first determine whether an actual innocence argument is viable.  *Id*.  Other courts have endorsed this approach.  *See, e.g., Souter v. Jones*, 395 F.3d at 589 ("Adhering to this principle of judicial restraint, we too will resolve the issue of whether Souter has put forth a credible claim of actual innocence before addressing the existence of the exception itself."); *Whitley v. Senkowski*, 317 F.3d 223 (2d Cir. 2003) (same); *Wyzykowski v. Dep't of Corrs.*, 226 F.3d 1213, 1218 (11th Cir. 2000) ("The factual issue of whether the petitioner can make a showing of actual innocence should be first addressed, before addressing the constitutional issue of whether the Suspension Clause requires such an exception for actual innocence.").  Consistent with this policy of judicial restraint, the Court will first address the merits of Petitioner's actual innocence claim.

### B.  Petitioner's Actual Innocence Objections.

Petitioner makes several objections to the R&R.  Dkt. #24.  The Court will address them in turn, construing the objections liberally to ensure full treatment of Petitioner's arguments.

### 1.  Salaiz and Enriquez statements.

Petitioner submits notarized statements from his aunt, Hope Salaiz, and his mother, Amollia Enriquez.  Dkt. #1, Exs. 2-3. Both statements were given on June 30, 1994.  *Id*.

Salaiz states that Petitioner's wife and step-daughter (whom he allegedly molested) told Salaiz that Petitioner was innocent.  Dkt. #1, Ex. 2.  According to Salaiz, Petitioner's wife said she fabricated the charges against Petitioner to get a divorce.  *Id*.  Salaiz states that she told prosecutor Lisa Roberts and defense attorney Ed Bassette about her conversation with the wife, but was never asked about it in court.  *Id*.  Salaiz states that Roberts told her that Roberts had lost a case involving Petitioner once and "wanted to see him hang."  *Id*.

Enriquez states that Petitioner's wife often used drugs and treated her children poorly. Dkt. #1, Ex. 3.  Enriquez claims the wife drove Petitioner away from Enriquez to the extent that Enriquez did not know Petitioner had been arrested until seeing the wife at a bar in October of 1988.  *Id*.  Enriquez claims that the wife told her in the bar's restroom that

1   Petitioner was in jail because of the wife's daughter and that the wife needed Petitioner out

2   of the way so she could divorce him.  Enriquez reports that this comment made her "livid

3   with rage" and near the point of assaulting the wife, and that the wife then "started to change

4   her story around, stating that she knew [Petitioner] had not done it."  *Id.*

5       These statements do not constitute the type of "new reliable evidence" necessary to

6   support a gateway claim of actual innocence.  *Schlup*, 513 U.S. at 324.  Examples of

7   sufficient evidence include "exculpatory scientific evidence, trustworthy eyewitness

8   accounts, or critical physical evidence."  *Id*.  The statements by Salaiz and Enriquez are

9   neither from eyewitnesses nor trustworthy.  Salaiz's statement is vague and internally

10  inconsistent, asserting initially that Petitioner's wife said she was afraid of Petitioner and

11  later that the wife viewed Petitioner as a good father who could be trusted with her children.

12  Dkt. #1, Ex. 2.  Enriquez's statement is also unclear, and reasonably can be read as

13  suggesting that the wife initially said Petitioner was in jail because he molested her daughter

14  (a convenient fact, the wife said, because she wanted a divorce), and then asserted

15  Petitioner's innocence only when Enriquez became enraged.  Such a reading would suggest

16  that the wife's exculpatory statement was defensive, intended to appease an angry Enriquez.

17      Moreover, although each statement is  notarized and titled "Affidavit," neither was

18  made under oath.  And both Salaiz and Enriquez are interested witnesses – Petitioner's aunt

19  and mother.  What is more, both women testified during various phases of Petitioner's

20  criminal proceedings and never mentioned the alleged conversations with Petitioner's wife.

21  Although Petitioner attributes this to ineffective assistance of counsel, it is at least curious

22  that neither woman would have volunteered such a critical fact during her testimony.

23      In determining whether Petitioner has made his actual innocence showing, the Court

24  may consider the credibility of the proffered witnesses and the reliability of their purported

25  testimony.  *Schlup*, 513 U.S. at 327, 332.  For the reasons explained, the Court cannot

26  conclude that the statements of Salaiz and Enriquez shift the balance of evidence sufficiently

27  to make it more likely than not that no reasonable juror could have convicted Petitioner.

28

1

## 2. The wife's letter.

Petitioner also includes an undated letter, purportedly received from his wife. The letter contains this statement, among others:

> I need to tell you something that may help you get out of there. But no one can know that I gave you the information. . . . But the real problem is me and one other person know's what I'm going to tell you and the other person is [Prosecutor] Lisa Roberts. So it can be hard on me still[.]

Dkt. #1, Ex. 4. The letter does not state what the ex-wife and prosecutor knew. Nor does it assert that Petitioner is innocent. The lack of a date further diminishes the letter's probative value; it could have referred to the first time Petitioner was accused of molestation, charges that later were dismissed by Prosecutor Roberts. *See* Dkt. #24 at 8. As with the statements of Salaiz and Enriquez, the Court cannot conclude that the letter constitutes the kind of new and reliable evidence that will support an actual innocence claim. *See Majoy*, 296 F.3d at 776.

## 3. Petitioner's statement.

Petitioner includes his own sworn statement, in which he makes a variety of arguments relating to the credibility of trial witnesses. Dkt. #1, Ex. 1. He states that his wife committed welfare fraud. *Id.* He claims that a prosecution witness, his former neighbor, was frequently drunk and often mentioned that she was molested as a child. *Id.* He claims that his attorney did not ask him to testify to these facts. *Id.* As the R&R points out, however, the trial court allowed defense counsel to impeach Petitioner's wife's testimony by presenting the fact of a prior felony conviction to the jury. Dkt. #21 at 15. Petitioner's statements about the former neighbor are of minimal probative value in assessing the accuracy of the verdict.

## 4. Medical evidence.

Petitioner's statement also asserts that it was medically impossible for him to have sexually molested his step-daughter. Dkt. ##1, Ex. 1; 24 at 6. He contends that after his arrest but before his trial, he was notified that the alleged victim was experiencing her first menstrual cycle. Dkt. #1, Ex. 1. While being treated for a brain cyst, Petitioner spoke with

one Dr. Penille, who explained the Tanner stages of female development and allegedly told Petitioner that his step-daughter would almost certainly have shown signs of penetration if she were molested several months pre-menstruation. *Id*; Dkt. #24 at 6.[1]

This evidence does not satisfy the actual innocence standard. Petitioner is merely recounting a conversation he had with one doctor who was examining him for reasons unrelated to the molestation allegations. There is no indication of the doctor's expertise or the information he was relying on to express an opinion, and there is no affidavit or other evidence from the doctor explaining this conversation. Respondents also note that Petitioner likely misrepresented the facts to Dr. Penille because evidence at trial showed the victim was in Tanner Stage 3, not Tanner Stage 2, as Petitioner apparently suggested to Dr. Penille. Dkt. #30 at 10, Ex. RR at 31. Dr. Kay Routh-Farley testified at trial that she had examined the victim, that her findings were inconclusive, and that the examination would support findings that the victim had and had not been penetrated repeatedly. *Id*., Ex. RR at 31-32.

### 5.    Allegedly missing medical evidence.

Petitioner asserts that the victim underwent two medical examinations by the state, at which the doctors reported she had not been molested, and that these doctors did not testify at trial. Dkt. #24 at 7. Petitioner provides no evidence other than his own statements that the state conducted these examinations. The Court previously searched the record in this case and found no evidence of the examinations.

Nevertheless, to address Petitioner's claim that medical evidence had been withheld, the Court entered an order directing Respondents to review Petitioner's file and come

---

[1]The R&R concludes that Petitioner's argument does not establish actual innocence because it is unaccompanied by other "admissible" evidence and because it would have been available to Petitioner at the time of trial and therefore is not new evidence. Dkt. #21. But evidence need not be admissible to support a successful actual innocence claim. *Schlup*, 513 U.S. at 327-28. Nor does it matter that the evidence is not "newly discovered." The Ninth Circuit holds that the proper inquiry is whether the evidence is "newly presented." *Griffin v. Johnson*, 350 F.3d 956, 962-63 (9th Cir. 2003). For reasons to be explained, the Court nonetheless concludes that Petitioner has not made out a claim of actual innocence.

forward with any exculpatory evidence in their possession.  Dkt. #27.  Applying *Thomas v. Goldsmith*, 979 F.2d 746 (9th Cir. 1992), the Court noted that Petitioner's allegations raised the possibility of the rare case in which Petitioner may be able to meet the *Schlup* actual innocence standard only through exculpatory evidence in Respondent's possession.  *Id*.  In *Thomas*, the Ninth Circuit held that the "state is under an obligation to come forward with any exculpatory [] evidence in its possession" and further instructed that "[i]f no such evidence exists, the state need only advise the district court of that fact."  *Id*. at 749-50.

In response to the Court's order, Respondents reviewed the case file and averred to the Court that "there are no medical reports, exculpatory or otherwise, that have been withheld from Petitioner (or that were withheld from jury consideration)."  Dkt. #30 at 4-5, Exs. NN-VV.  Respondents further avowed that "[t]here is no indication in the record that there ever were any other medical examinations or results that were undisclosed to Petitioner. Respondents possess no other information concerning alleged 'medical examinations.'"  *Id*. at 6 (footnote omitted).

Respondents explain that Petitioner's allegation of two exculpatory medical exams conducted by people who did not testify at trial likely refers to the physician and nurse who examined the victim during her initial emergency room visit and who were listed as potential trial witnesses.  *Id*. at 5 (citing Dkt. #24, Ex. 1).  These individuals conducted tests on the victim with a sexual assault kit and determined that no sperm was found in the victim's vagina.  Dkt. #30, Exs. QQ at 11, 67, 77, 93-97; RR at 45, 54-56.  Although the doctor and nurse did not testify at trial, their findings were presented to the jury and were consistent with the victim's testimony that Petitioner did not ejaculate inside her and often made her use a douche after any sexual contact so that she did not get pregnant and so the "doctor couldn't find evidence."  Dkt. #30, Ex. PP at 35, 38, 39.

The Court is satisfied that Respondents have reviewed Petitioner's case file and have found no evidence of exculpatory medical examinations or any other forms of exculpatory evidence.  Although the victim's initial medical examination did not yield proof of sexual penetration, there was testimony and evidence adduced at trial that supported the jury's belief

1  that Petitioner molested the victim.  Petitioner's "bare allegations, unsupplemented by

2  evidence, do not tend to establish his actual innocence [.]" *Thomas*, 979 F.2d at 750.[2]

3              **6.    Cumulative evaluation.**

4          Petitioner correctly notes that any evidence of his actual innocence must be assessed

5  cumulatively, even if each piece does not suffice to meet the *Schlup* standard individually.

6  *See* Dkt. #24 at 7, 9; *Schlup*, 513 U.S. at 328 (the "habeas court must make its determination

7  concerning petitioner's innocence 'in light of all the evidence[.]'").   The Court has

8  considered the cumulative effect of the evidence discussed above and cannot conclude that

9  it satisfies the gateway actual innocence standard.  Ambiguous and unsworn statements from

10 Salaiz and Enriquez, an ambiguous and undated letter from Petitioner's wife, arguments

11 about the credibility of witnesses, Petitioner's report of a conversation with a doctor, and

12 uncorroborated accusations of missing medical examinations, even when considered

13 together, simply do not show that it is more likely than not that no reasonable juror would

14 have found Petitioner guilty at trial.  *Schlup*, 513 U.S. at 327.  Because Petitioner has not

15 satisfied the *Schlup* actual innocence requirement, he cannot toll the AEDPA statute of

16 limitations even if such tolling is possible.  The petition remains untimely.

17          **C.    Petitioner's Miscellaneous Objections.**

18          Although Petitioner's failure to show his actual innocence precludes the Court from

19 considering the merits of his petition, the Court will briefly address several additional

20 objections.

21          Petitioner repeatedly asserts a claim of substantive innocence distinct from his

22 gateway actual innocence claim under *Schlup*.  Dkt. #24 at 2-4, 11.  Petitioner cites *Smith v.*

23 *Baldwin*, 466 F.3d 805 (9th Cir. 2006), for the proposition that he be allowed to assert such

24

25          [2]Petitioner further objects that when Dr. Kay Routh-Farley testified that it was

26 "possible" that the victim had been molested, the defense attorney did not ask any follow-up
   questions and did not call any defense medical experts. Dkt. #24 at 7.  This is a merits issue

27 on Petitioner's claim of ineffective assistance of counsel that the Court may not address

28 unless Petitioner meets the *Schlup* actual innocence exception.

1    a substantive innocence claim for the first time in his objections to the R&R.[3]   *Id.* at 3.

2    Contrary to Petitioner's belief, *Smith* dealt with the same type of gateway actual innocence

3    claim the Court addresses here, but noted in dictum that the *Schlup* actual innocence inquiry

4    is a less stringent standard than a substantive actual innocence claim, in which the petitioner

5    must affirmatively prove that he is probably innocent. *Id.* at 812 (citing *Carriger v. Stewart*,

6    132 F.3d 463, 476 (9th Cir. 1997)).  Even assuming that Petitioner may assert a substantive

7    claim for the first time in his objections, the discussion above shows why he has not satisfied

8    this higher standard.

9         Petitioner continues to discuss the medical examinations, stating that he notified his

10   trial attorney and all of his state appellate and post-conviction relief attorneys to investigate

11   whether medical evidence could exonerate him.  Dkt. #24 at 7.  According to Petitioner,

12   "[n]one of the attorneys would do so and none would even make a single inquiry."  *Id.*

13   Petitioner acknowledges that without credible medical expert testimony, it is difficult for him

14   to establish his actual innocence, but "without court intervention, [he] cannot obtain the

15   assistance of an expert who would prove his innocence."  *Id.*  Petitioner requests the

16   assistance of an attorney in obtaining the allegedly suppressed evidence of the first two

17   medical examinations and also requests a newly appointed medical expert who "will prove

18   he is innocent."  *Id.* at 2, 7; Dkt. #31 at 6.

19        By requiring Respondents to disclose any exculpatory evidence in its possession, the

20   Court has addressed Petitioner's arguments regarding the difficulty of obtaining exculpatory

21   evidence in Respondents' control.  *See Thomas*, 979 F.2d at 749-50.  Petitioner argues that

22   Respondents violated the Court's order by not providing medical reports (Dkt. #31 at 5), but

23   the Court's order clearly stated, in accord with *Thomas*, that Respondents need only turn over

24   medical evidence that was exculpatory.  Moreover, given the fact that the medical findings

25   of the emergency room personnel and the inconclusive tests of Dr. Routh-Farley were

26

27        [3]*Smith v. Baldwin* has been submitted to the Ninth Circuit for en banc review.  *See* 482
28   F.3d 1156 (9th Cir. 2007).

1   presented to the jury in this case – in other words, that the jury knew there was no sperm

2   found in the victim and that the victim's physical condition did not clearly show that

3   molestation had occurred – there is no basis to believe that a Court-appointed attorney or

4   medical expert would assist Petitioner in meeting the *Schlup* standard.

5        Petitioner next objects "to the extent that the second R&R attempts to mischaracterize

6   the *Schlup* claim as relying solely upon fabricated testimony evidence[.]" Dkt. #24 at 5.

7   Petitioner states that the core of his claim is that a medical expert given the facts would find

8   it scientifically impossible for Petitioner to be guilty. *Id.* The R&R did not disregard this

9   core assertion (*see* Dkt. #21), and, in any event, this Court has addressed it above.

10       Petitioner also objects to the R&R's conclusion that "trial counsel did, evidently,

11  present expert medical testimony on behalf of Petitioner." Dkt. ##21 at 19 (citing Dkt. #11,

12  Ex. D); 24 at 11. Petitioner claims that he did not have a medical expert who consulted with

13  his trial attorney or testified on his behalf at trial. Dkt. #24 at 6. Even if this is true, it does

14  not alter the conclusion that Petitioner has failed in this Court to establish gateway actual

15  innocence.

16       Petitioner next argues that because Respondents have not contested his allegation that

17  "any medical expert who is given the correct patient history, medical findings, and Lindley's

18  anatomical measurements" will undeniably testify that he is innocent, the Court must accept

19  these allegations as true. Dkt. #24 at 6. Respondents did address this argument in their

20  response. Dkt. #30 at 10. Their failure to respond previously will not be deemed an

21  admission that Petitioner is innocent.

22       Petitioner makes two new objections to the R&R's treatment of the merits of his

23  habeas claims.[4] First, he asserts that the R&R ignored evidence of bias on the part of one

24  juror during voir dire. Dkt. #24 at 9. Next, Petitioner argues that the R&R erred in

25

26       [4]Although the R&R concluded that Petitioner had not satisfied the *Schlup* actual
    innocence standard, it proceeded to address the merits of the habeas petition. Dkt. #21 at 17.
27  In objecting to this section of the R&R, Petitioner reasserted objections that the Court has
    discussed elsewhere in this order. The Court will not repeat that discussion here.
28

concluding that the state had properly addressed Petitioner's claim of ineffectiveness of trial and appellate counsel. Dkt. #24 at 10. Because these issues deal with the merits of Petitioner's untimely habeas petition, the Court will not address them. The R&R's treatment of these issues does not alter the Court's actual innocence conclusion set forth above.

Petitioner also objects to the R&R's finding that Petitioner failed to act with due diligence that would entitle him to a tolling of the statute of limitations. Dkt. #21 at 21. The R&R cites Eighth and Tenth Circuit law in imposing this requirement. *See Flanders*, 299 F.3d at 978; *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000). Because the Court finds that Petitioner has not satisfied the *Schlup* actual innocence standard, the Court need not address whether a due diligence requirement applies in the Ninth Circuit.

Finally, Petitioner states that he has obtained literature on sexual assault and asks that the Court allow him to supplement his objections with these documents or "to consider [these] document[s] sight-unseen as establishing that no penetration crime took place." Dkt. ##24 at 12; 28 at 1. The documents include a brochure entitled "Guidelines" and a 1994 article entitled "Medical Consideration in the Diagnosis of Child Sexual Abuse," published by the Institute for Psychological Therapies. Dkt. #28 at 1. Petitioner submitted the latter article without leave of court. Dkt. #31-2 at 4. The Court has reviewed this document and finds that it does not pertain specifically to Petitioner's case and does not help demonstrate that no reasonable juror could have convicted him. *See Schlup*, 513 U.S. at 327. Nor, given the Court's evaluation of the arguments set forth above, does the Court conclude that reviewing the brochure would produce a different outcome.

**IT IS ORDERED:**

1.    Magistrate Judge Aspey's R&R (Dkt. #21) is **accepted**.

2.    Petitioner Lindley's petition for writ of habeas corpus (Dkt. #1) is **denied**.

3.    Petitioner's motion to appoint counsel (Dkt. #31) is **denied**.

4.    The Clerk is directed to **terminate** this matter.

1

DATED this 10th day of August, 2007.

2

3

4

David G. Campbell
United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28